DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Perrysburg Municipal Court, which entered a judgment on a jury verdict finding appellant Jason Palicki guilty of violating a protection order. For the reasons that follow, we find that the judgment of the trial court must be affirmed.
Appellant and Heather Stefango once dated. In 1999, after that relationship ended, Stefango sought and was granted a protection order enjoining appellant from having any contact with her. Stefango testified at trial that she was awakened by a phone call at approximately 2:30 a.m. on April 5, 2000. According to the caller ID feature on Stefango's phone, the call originated from the Shamrock Sports Bar on Reynolds Road near Hill Avenue in Toledo, a bar that Stefango used to frequent when she was dating appellant. Stefango testified that the caller was a woman who identified herself as Angie and said that Jason wanted to know if she (Stefango) would unlock her door.[1] After telling the caller to tell Jason to leave her alone, Stefango hung up.
Sometime after 4:00 a.m. on April 5, Stefango was again awakened by a phone call. Her caller ID indicated only "private"; it did not indicate a number for the originating phone. This time, a male spoke, asking Stefango to please unlock her door. Stefango testified that she was "positive," ("100 percent" sure) that the caller was appellant because she recognized his voice from having dated him. Stefango hung up. After that call, her phone rang several times more, and each time the caller ID indicated "private." Stefango did not answer the phone. Instead, she called the Perrysburg police. While she was on the phone with the Perrysburg police, Stefango's call waiting feature indicated several additional incoming calls, but again the caller was identified only as "private."
Next, Marlene Szwhowski, the manager of the Shamrock Sports Bar, testified. She arrived at the bar at approximately 12:30 a.m. on April 5. She testified that she is familiar with appellant as a customer of the bar, and she remembered that he had left the bar at closing on April 5 and had then come back to pick up a jacket that he had left behind. She estimated that appellant came back into the bar at approximately 2:20 a.m. Szwhowski also testified that she saw Bob Cope and Dreama Guess, appellant's friends, at the bar that night. She did not see anyone come into the bar with appellant when he came in to retrieve his coat, and she does not know an "Angie" to be a regular customer of the bar. Szwhowski indicated that there were three phones for the Shamrock Sports Bar — two pay phones and one business phone. One pay phone is located inside the bar, one pay phone is located just outside the bar, and the business phone is located behind the bar. According to Szwhowski, she did not see appellant using the phone at any time on the morning in question, but she also admitted that she was not paying special attention to him and was, in fact, distracted by a fight that had occurred at the bar earlier that night.
David Woehrman, corporate security manager for Ameritech, also testified at trial. He examined phone records for incoming calls on Stefango's home phone in the early morning hours of April 5, 2000. According to Woehrman, the first call originated from an outside pay phone at the Shamrock Sports Bar at 2:27 a.m. on April 5, and it lasted just under thirty seconds. The second and third calls originated from a pay phone at a Dairy Mart on Oregon Road in Perrysburg Township at 4:13 a.m. and 4:15 a.m. respectively, and the fourth and fifth calls originated at 5:01 a.m. and 5:02 a.m. from a pay phone at a Shell gas station at 1025 South Reynolds Road in Toledo.
Next, Detective Daniel Paez of the Perrysburg police testified. Paez testified, first, as to the location of the bar, the location of appellant's residence, and the location of the pay phones from which the calls to Stefango's residence were made. Paez testified that appellant was staying at 5034 Prestler, in Toledo, which is in the Reynolds — Dorr area, just about a mile from the Shamrock Sports Bar where the first call was made.[2] The Dairy Mart, where the second and third calls were made, is at the intersection of Highway 795 and Oregon Road in Perrysburg Township, approximately two to three miles from Stefango's residence. The last calls were made from a Shell station on Reynolds Road near Angola in Toledo, approximately two or two and one-half miles from where appellant was living. Paez testified that one would have "plenty of time" in the approximately one and one-half hours between the first phone call and the last to go from the Shamrock Sports Bar to the residence on Prestler, down to Perrysburg Township, and back up Reynolds Road to the Prestler residence.
Paez also testified about his initial interview with Stefango on April 5, 2000. He testified that Stefango told him that the first call was made by a woman on behalf of appellant, but Paez does not remember Stefango saying that the caller indicated that she was calling for appellant. He also testified that Stefango was "very certain" (she was "a hundred percent sure") that she recognized appellant as the caller on the second call.
Dreama Guess, appellant's friend, also testified. Guess dates Bob Cope, another of appellant's friends, and Guess testified that she was at the Shamrock Sports Bar with Bob Cope in the early morning hours of April 5, 2000. According to Guess, appellant arrived at the bar sometime after 1:00 a.m. and he sat with her and Cope much of the night. Guess testified that appellant did not come into the bar with a woman, but that he "probably talk[ed] to girls * * *." However, she testified that she does not know an "Angie" to be a regular customer of the Shamrock Sports Bar. Guess testified that she did not see appellant using a phone inside or outside the bar anytime that morning, but she admitted that she was not watching appellant every minute.
According to Guess, when the bar closed, Guess and Cope walked out of the bar with appellant, and then Cope and she left in one car and appellant left in another. All three were heading to the residence on Prestler. On cross-examination, Guess admitted to the possibility that appellant could have gone back into the bar after closing to retrieve his coat — that she might not have noticed if she was standing around outside the bar talking to people. Guess testified that, though she did not keep appellant in sight during the ride home, he pulled into the driveway right after she and Cope did. Upon arriving home, she and Cope went to bed and appellant stayed up and watched television. Guess testified that she did not hear appellant leave during the night, but at the same time she did not stay up all night listening for his comings and goings.
Bob Cope also testified that he saw appellant at the Shamrock Sports Bar on the morning in question and that appellant spent much of the time talking to Cope. Cope did not see appellant talking to any women. According to Cope, Guess, appellant and he left the bar at closing, around 2:00 or 2:15 a.m., and he did not see appellant making any phone calls. He testified that appellant was right behind Guess and him when they all drove away from the bar. Like Guess, Cope testified that he did not hear appellant leave the house that night, but he did not keep an eye on appellant all night.
Following trial, the jury found appellant guilty of violating a protection order. Appellant now appeals, setting forth the following assignment of error:
 "APPELLANT'S CONVICTION FOR VIOLATING A PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
"Weight of the evidence" refers to the jury's resolution of conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
Appellant was charged with violating R.C. 2919.27(A)(1), which provides:
 "(A) No person shall recklessly violate the terms of any of the following:
 "(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code[.]"
"Reckless" conduct is defined in R.C. 2901.22 (C) as follows:
 "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
After examining the entire record below, we cannot say that the jury "lost its way" or created a manifest miscarriage of justice. Appellant was at the bar around the time that the first call was made, and Stefango was certain that appellant, himself, was the second caller. As to the testimony of Guess and Cope that appellant came home with them after the bar closed, the jury apparently disbelieved this testimony or chose to believe that appellant left the home after Guess and Cope went to bed. In either case, the jury did not lose its way or create a manifest miscarriage of justice in making the inferences and credibility determinations that it apparently did. Accordingly, appellant's sole assignment of error is found not well-taken.
The judgment of the Perrysburg Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
 ______________________ James R. Sherck, JUDGE
Richard W. Knepper, J. and Mark L. Pietrykowski, P.J. CONCUR.
[1] When called to testify by the defense, Stefango admitted that her trial testimony was different than a statement given to Perrysburg police the day after the phone call in that, in the statement, Stefango did not say that "Angie" told her that she was calling on behalf of appellant.
[2] Paez testified that it was his "understanding" that the call from Shamrock originated from a business phone inside the bar.